WINSTON & STRAWN LLP
Nicole M. Norris (SBN 222785)
James F. Hurst (*Admitted Pro Hac Vice*)
David J. Doyle (*Admitted Pro Hac Vice*)
Samuel S. Park (*Admitted Pro Hac Vice*)
101 California Street, Suite 3900
San Francisco, CA 94111
Telephone Number:    415.591.1000
Facsimile Number:    415.591.1400

Attorneys for Defendant
ABBOTT LABORATORIES

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

|  |  |
|---|---|
| SAFEWAY INC.; WALGREEN CO.; THE KROGER CO.; NEW ALBERTSON'S, INC.; AMERICAN SALES COMPANY, INC.; and HEB GROCERY COMPANY, LP,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | **Case No. C 07-5470 CW**<br><br>*Related per October 31, 2007 Order to* **Case No. C-04-1511 (CW)**<br><br>**ABBOTT LABORATORIES' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>**DATE:   JANUARY 17, 2008**<br>**TIME:    2:00 PM**<br>**ROOM: 2**<br>          **Honorable Claudia Wilken** |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## NOTICE OF MOTION

### TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on January 17, 2008 at 2:00 PM, or as soon thereafter as the matter may be heard in Courtroom 2, before the Honorable Claudia Wilken, in the United States District Court for the Northern District of California, Oakland Division, defendant Abbott Laboratories will move this Court to dismiss Plaintiffs' Amended Complaint filed November 29, 2007. This motion is supported by the accompanying Memorandum of Points and Authorities, all pleadings and documents on file with the Court, and such other argument or evidence as may be presented at the hearing on the motion.

Abbott Laboratories requests Plaintiffs' Amended Complaint be dismissed with prejudice. A proposed order granting the motion is filed herewith.

## INTRODUCTION

Just three months ago, the Ninth Circuit rejected the antitrust theory now being pursued by Safeway and the other plaintiffs in this case. In *Cascade Health Solutions v. PeaceHealth*, 502 F.3d 895 (9th Cir. 2007), the Ninth Circuit held that an alleged monopolist's pricing decisions potentially violate the Sherman Act only if the resulting prices are below cost. *Id.* at 920. Because the Safeway Plaintiffs have failed to allege that Abbott Laboratories priced its HIV drugs below cost (nor could they), they have failed to state a claim under Rule 12(b)(6).

Like the plaintiffs in the related cases before this Court, Plaintiffs allege that Abbott monopolized the purported market for boosted protease inhibitors ("PIs") by leveraging its monopoly over Norvir, a patented drug used to "boost" the activity of other PIs. Plaintiffs do not – because they cannot – dispute that Abbott had a legal right under the patent laws to raise the price of Norvir. So, instead, they complain that Abbott charges a "much lower price" for Norvir's active ingredient when it is bundled with another PI in the form of Kaletra. (Am. Compl. ¶ 31). According to Plaintiffs, Abbott's bundled discounting constitutes anti-competitive or exclusionary conduct in violation of the Sherman Act. In essence, under Plaintiffs' reasoning, Abbott should be charging more for Kaletra.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

As the Ninth Circuit explained in *Cascade*, the concern with bundled discounting is that "a competitor who sells only a single product in the bundle [i.e., a PI] ... might not be able to match profitably the price created by the multi-product bundled discount [i.e., Kaletra's price for both a PI and ritonovir]." *Cascade*, 502 F.3d at 906. Before *Cascade*, only the Third Circuit had addressed when bundled discounting potentially qualifies as "exclusionary conduct." *See LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003). In an *en banc* decision, the Third Circuit held that bundled discounts could be exclusionary – even without below-cost pricing – if a monopolist "leveraged" its monopoly in one market by offering bundled discounts that extended to other markets (a) without an "adequate business justification" and (b) in a way that "may foreclose portions of [those] market[s] to a potential competitor who does not manufacture an equally diverse group of products and who therefore cannot make a comparable offer." *Id*. at 163, 155.

The Ninth Circuit now has specifically rejected the Third Circuit's test, which is the precise test the Doe and SEIU plaintiffs have been pursuing for the last three-and-a-half years. Without qualification, the Ninth Circuit in *Cascade* held that above-cost bundled discounting is never exclusionary conduct as a matter of law. *Cascade*, 502 F.3d at 913-14. After noting that "the Supreme Court has forcefully suggested that we should not condemn prices that are above some measure of incremental cost," the Court explained that "bundled discounts may not be considered exclusionary conduct within the meaning of § 2 of the Sherman Act unless ... the discounts result in prices that are below an appropriate measure of the defendant's costs." *Id*.

*Cascade* is controlling and dispositive here. The Safeway Plaintiffs do not allege that Abbott has engaged in below-cost pricing (and cannot do so consistent with their Rule 11 obligations). Thus, they have failed to state a claim for monopolization under section 2 of the Sherman Act. Their complaint accordingly should be dismissed.

Plaintiffs can find no solace in the Ninth Circuit's patent-leveraging decision in *Images Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997), which is the case upon which the Doe and SEIU plaintiffs principally have been relying. *Kodak* did not address whether a pricing decision can qualify as exclusionary conduct. Rather, the case involved a classic example of exclusionary conduct – an outright "refusal to deal." *Id*. at 1216. So the main issue for

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1  the Court, after finding that Kodak had monopoly power, was whether Kodak's patents provided
2  antitrust immunity for its undisputed exclusionary conduct. *Id.* at 1216.

3      In this motion, Abbott is not raising its patent immunity defense. Rather, the only
4  issue is whether Abbott's above-cost pricing decisions can amount to exclusionary conduct as a
5  matter of law. *Cascade* holds that they cannot. *Cascade*, 502 F.3d at 913-14. Therefore, the
6  Safeway Plaintiffs have failed to allege that Abbott engaged in any exclusionary conduct, which
7  requires dismissal under Rule 12(b)(6).

8                                        **BACKGROUND**

9      This is an antitrust case brought by the Safeway Plaintiffs – owners and operators of
10 retail stores who sell Norvir and Kaletra to the public. The only two counts in the complaint purport
11 to state claims under section 2 of the Sherman Act. (Am. Compl. ¶¶ 26-38). The Safeway Plaintiffs
12 brought this action on their own behalf and as the assignees of certain pharmaceutical wholesalers
13 who allegedly purchased Norvir and Kaletra directly from Abbott. (*Id.* ¶¶ 1-6).

14     By now, the Court is familiar with the facts. Protease inhibitors are powerful drugs
15 used to stop HIV's replication. (*Id.* at Introduction). There are many PIs on the market, including
16 two sold by Abbott. Norvir® is "a protease inhibitor ('PI') that is used to boost the therapeutic
17 effects of other protease inhibitors." (*Id.*) Abbott also sells Kaletra®, "a combination drug
18 consisting of Norvir and another Abbott PI, whose chemical or generic name is lopinavir." (*Id.* ¶
19 12).

20     The Safeway Plaintiffs allege that there are two relevant markets: the "boosting
21 market" and the "boosted market." (*Id.* ¶ 25). The "boosting market" consists of the market for
22 Norvir when used as a booster. *Id.* Plaintiffs assert that, as the sole provider of patented Norvir,
23 Abbott has a lawful patent monopoly over the "boosting market." The boosted market, in contrast,
24 "consists of Kaletra and a number of non-Abbott PIs, each of which is prescribed and used in
25 conjunction with Norvir." *Id.* There currently are six non-Abbott protease inhibitors in that market
26 – two of which have been introduced since Norvir's price increase.

27     At no time do the Safeway Plaintiffs allege that Abbott has engaged in below-cost
28 pricing by any measure. Instead, they allege that Abbott took a price increase in the "boosting

market" to monopolize or attempt to monopolize the "boosted market." (*Id.* ¶¶ 29-41). Specifically, they allege that Abbott raised the wholesale price of Norvir in December 2003 from $1.71 to $8.57 for a 100 milligram capsule. (*Id.* ¶ 21). Abbott did not, however, raise the price of Kaletra, which uses Norvir as a booster. (*Id.*). Thus, as the Safeway complaint explains, "Abbott raised the price of Norvir only when it is used to boost a non-Abbott PI" and, consequently, "Norvir is sold at a much lower price when used as one component of Abbott's own boosted PI, Kaletra." (*Id.* ¶¶ 21, 31).

## **ARGUMENT**

The Supreme Court recently held that to state claim under the Sherman Act, a plaintiff must allege facts sufficient to demonstrate "plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007). A "bare assertion" of an antitrust violation will not suffice. *Id.* at 1966. Rather, to state a claim, a plaintiff must allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" of an antitrust violation. *Id.* at 1967. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Cargill Inc. v. Budine*, No. CV-F-07-349-LJO-SMS, 2007 WL 4207908, at *2 (E.D. Cal. Nov. 27, 2007). Here, Plaintiffs have failed to allege any facts suggesting a "plausible" basis to believe that Abbott has engaged in the below-cost pricing of its products. Accordingly, their complaint should be dismissed under Rule 12(b)(6).

## I.  THE NINTH CIRCUIT HELD IN *CASCADE* THAT PRICING ACTIONS QUALIFY AS EXCLUSIONARY CONDUCT ONLY WHEN THE PRICES ARE BELOW COST

In *Cascade*, the Ninth Circuit held that pricing actions in the context of bundled discounts qualify as exclusionary conduct only when the defendant engages in below-cost pricing. In so holding, the Ninth Circuit "decline[d] to endorse the Third Circuit's definition of when bundled discounts constitute the exclusionary conduct proscribed by § 2 of the Sherman Act." *Cascade*, 502 F.3d at 913. The Court instead "part[ed] ways with the Third Circuit by adopting a cost-based standard to apply in bundled discounting cases." *Id.* at 910, 913-14. It thus held that pricing decisions on bundled products "may not be considered exclusionary conduct within the meaning of § 2 of the Sherman Act unless the discounts resemble the behavior that the Supreme Court in *Brooke*

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

*Group* identified as predatory," *i.e.*, "the discounts result in prices that are below an appropriate measure of the defendant's costs." *Id.* at 913-14.

The issue in *Cascade* related to a hospital group, PeaceHealth, with a monopoly in the relevant geographic region over "tertiary services," which are highly complex services like cardiovascular surgery. *Id.* at 902. Though pricing decisions, PeaceHealth leveraged its "tertiary services" monopoly to gain an advantage in the separate market for "primary and secondary services," which are more common and routine medical services. *Id.* at 902-03. Specifically, PeaceHealth offered a 35% to 40% discount on tertiary services to any insurer willing to make PeaceHealth "their sole preferred provider for *all* services—primary, secondary, and tertiary." *Id.* at 903 (emphasis in original).

The Ninth Circuit described this practice as "bundled discounting," explaining that "[b]undling is the practice of offering, for a single price, two or more goods or services that could be sold separately" and then offering that bundled product for "a lower price than the seller charges for the goods or services purchased individually." *Id.* at 905. Such discounts can impact "competitor[s] who sell only a single product in the bundle (and who produce[] that single product at a lower cost than the defendant) [and] might not be able to match profitably the price created by the multi-product bundled discount." *Id.* at 906.

PeaceHealth's strategy worked. Through its substantial bundled discounts, PeaceHealth leveraged its tertiary-services monopoly to the point where 86% of its tertiary customers also purchased its primary and secondary services. *Id.* at 928. That practice nearly put a competing hospital out of business. *Id.* at 902. The competing hospital did not provide tertiary services and, thus, could not offer a comparable discount for its services. *Id.* As a result, a jury concluded that Peace Health violated section 2 of the Sherman Act based on the factual finding that, without an adequate business justification, the bundled discounts were "offered by a monopolist and substantially foreclose[d] portions of the market to a competitor." *Id.* at 909.

In overturning that verdict, the Ninth Circuit primarily relied on Supreme Court cases outside the context of bundled discounting. It noted that "the Supreme Court has forcefully suggested that we should not condemn prices that are above some measure of incremental cost." *Id.*

at 911.  In *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993), for instance, the Supreme Court held that "a plaintiff seeking to establish competitive injury resulting from a rival's low prices must prove that the prices complained of are below an appropriate measure of its rival's costs."  *Id*. at 222.  In doing so, the Supreme Court rejected the "notion that above-cost prices that are below general market levels or the costs of a firm's competitors inflict injury to competition cognizable under the antitrust laws."  *Id*. at 223.

The Ninth Circuit also relied on the Supreme Court's recent decision in *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 127 S. Ct. 1069, 1078 (2007), which reversed a Ninth Circuit decision cited parenthetically in this Court's summary judgment ruling in the earlier Norvir cases.  *See In re Abbott Labs. Norvir Anti-Trust Litig.*, 442 F. Supp. 2d 800, 806 (N.D. Cal. 2006).  In *Weyerhaeuser*, the Supreme Court extended *Brooke Group*'s below-cost requirement from predatory pricing cases to predatory bidding cases.  *Id*. at 1078.  Predatory bidding occurs where a defendant is accused of "bidding up input costs to drive rivals out of business." *Cascade*, 502 F.3d at 911.  Consistent with *Brooke Group*'s conclusion that above-cost pricing was beyond the reach of the antitrust laws, the Supreme Court in *Weyerhaeuser* held that establishing an antitrust violation required proof "that the alleged predatory bidding led to below-cost pricing of the predator's outputs."  *Weyerhaeuser*, 127 S. Ct. at 1078.

Based on *Brooke Group* and *Weyerhaeuser*, the Ninth Circuit in *Cascade* held that "in the normal case, above-cost pricing will not be considered exclusionary conduct for antitrust purposes."  *Cascade*, 502 F.3d at 912.  Thus, it concluded that "bundled discounts may not be considered exclusionary conduct within the meaning of § 2 of the Sherman Act unless the discounts resemble the behavior that the Supreme Court in *Brooke Group* identified as predatory" – that is, "unless the discounts result in prices that are below an appropriate measure of the defendant's costs." *Id*. at 913-14.

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## II.     The Safeway Plaintiffs Have Failed To Allege Below-Cost Pricing And, Thus, Abbott's Pricing Of Norvir And Kaletra Does Not Amount To Exclusionary Conduct.

*Cascade* controls this case.  The Safeway Plaintiffs have failed to allege that Abbott has engaged in below-cost pricing by any measure.  Nor could they.  Thus, they have stated no plausible grounds for a Sherman Act violation.

Although they do not use the term, Plaintiffs are relying a "bundled discount" theory of exclusion.  They allege that Abbott is "offering, for a single price, two ... goods ... that could be sold separately" in the form of Kaletra (lopinavir and ritonavir).  *Id*. at 905.  They also allege that Abbott charges a "much lower price" for ritonavir when sold in a bundled product along with lopinavir than when it is sold alone.  (Am. Compl. ¶ 31). That is a bundled discounting theory.  *Cf Cascade*, 502 F.3d at 907 (providing as an example of a bundled discounting scenario, "the sale of two hair products, shampoo and conditioner, the latter made only by A and the former by both A and B" and where "both must be used to wash one's hair.")

Plaintiffs' complaint focuses on Norvir's price increase, but that obviously is not the alleged exclusionary conduct.   "[S]etting high prices in the original 'monopoly' market" is among the "ways that a monopolist can permissibly benefit from its position" under the patent laws.  *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 548-49 (9th Cir. 1991).  As the Federal Circuit observed in *Monsanto Co. v. McFarling*, 302 F.3d 1291, 1299 (Fed. Cir. 2002), "the owner of a patented article can, of course, charge such price as he may choose."

So rather than claiming that Norvir's price increase amounted to exclusionary conduct, Plaintiffs are complaining about Abbott's simultaneous decision *not* to increase Kaletra's price, which they claim effectively discounted ritonavir when purchased with lopinavir.  Specifically, they allege that "Abbott raised the price of Norvir only when it is used to boost a non-Abbott PI," *i.e.*, ritonavir *without* lopinavir.  (Am. Compl. ¶ 21).  Thus, "Norvir is sold at a much lower price when used as one component of Abbott's own boosted PI, Kaletra," *i.e.*, ritonavir *with* lopinavir.  (*Id.* ¶ 31).

Under the Ninth Circuit's decision in *Cascade*, however, selling ritonavir at a "much lower price" price when bundled with lopinavir does not amount to "exclusionary conduct within the

meaning of § 2 of the Sherman Act unless ... the discounts result in prices that are below an appropriate measure of the defendant's costs." *Id.* at 914.  The Safeway Plaintiffs have simply not alleged that Abbott engaged in below-cost pricing.  Nor could they.  If Abbott had been engaged in below-cost pricing for the last four years, new PIs certainly would not have entered the market merely to sell at a loss.

*Cascade*'s logic is particularly compelling under these circumstances.  Aside from a few narrow exceptions, "there is no duty to aid competitors."  *Verizon Comms. Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004).  Thus, Abbott was not required to help its competitors by keeping Norvir priced at $1.71 per day for its standard boosting dose – a price that Abbott deemed to be far below its market value in a market crowded with $20 and $30 drugs.

At the same time, forcing Abbott to increase Kaletra's price to fully incorporate Norvir's price increase (thus, defeating Safeway's claims) would be counter to consumers' interests.  Antitrust policies are designed to assist consumers, not competitors.  As the Supreme Court has explained, "forcing firms to maintain supracompetitive prices, thus depriving consumers of the benefits of lower prices in the interim, does not constitute sound antitrust policy."  *Brooke Group*, 509 U.S. at 224.

## III.    The Ninth Circuit's Decision in *Kodak* Cannot Salvage the Safeway Plaintiffs' Case In Light Of *Cascade*.

*Kodak* offers the Plaintiffs no help in the wake of *Cascade*.  For years, the Doe and SEIU plaintiffs have been relying on the Ninth Circuit's patent-leveraging decision in *Kodak.  See Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997).  The Safeway Plaintiffs presumably will cite the same case.  But *Kodak* is irrelevant to this motion to dismiss, where the only issue is whether Abbott engaged in exclusionary conduct, not whether Abbott's patents provide immunity from any antitrust charges.

Unlike here, there was no issue about whether exclusionary conduct had occurred in *Kodak*, which was a classic "refusal to deal" case.  Kodak had refused to sell its "photocopier and micrographic parts to create a second monopoly in the equipment service markets."  *Id.* at 1200.  When addressing the same case at an earlier stage of the litigation, the Supreme Court explained that

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   companies generally "can refuse to deal with its competitors ... only if there are legitimate

2   competitive reasons for the refusal." *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504

3   U.S. 451, 483 (1992). The Ninth Circuit similarly explained that "Section 2 of the Sherman Act

4   prohibits a monopolist's unilateral action, *like Kodak's refusal to deal*, if that conduct harms the

5   competitive process in the absence of a legitimate business justification." *Kodak*, 125 F.3d at 1209

6   (emphasis added).

7           Thus, there was simply no issue about Kodak's exclusionary conduct in the form of a

8   refusal to deal. The only issue was whether Kodak's patents over copier parts provided an adequate

9   justification and, thus, antitrust immunity for its refusal to deal with competitors. The Court

10  explained that "while exclusionary conduct can include a monopolist's unilateral refusal … to sell its

11  patented or copyrighted work, a monopolist's desire to exclude others from its protected work is a

12  presumptively valid business justification for any immediate harm to consumers." *Id.* at 1218

13  (internal quotations omitted). Therefore, "Kodak's contention that its *refusal to sell* its parts to ISOs

14  was based on its reluctance to sell its patented or copyrighted parts was a presumptively legitimate

15  business justification." *Id.* at 1219 (emphasis added). Nonetheless, because the plaintiffs presented

16  evidence that this justification was a "pretext" that played no part in Kodak's decision to act, the

17  Court concluded that Kodak had no justification for its exclusionary conduct. *Id.* at 1120.

18          / / /

19          / / /

20          / / /

21          / / /

22          / / /

23          / / /

24          / / /

25          / / /

26          / / /

27          / / /

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    For the present motion, unlike *Kodak*, Abbott is raising no issue about whether its

2  patents provide immunity from antitrust charges.   And there is also no issue about a "refusal to

3  deal."    The Safeway Plaintiffs have not alleged that Abbott refused to sell Norvir or Kaletra.

4  Rather, their only theory of exclusion is Abbott's alleged discounting of ritonovir when sold as a

5  bundled product (Kaletra) compared to when it is sold alone (Norvir) as a booster for competitive

6  PIs.    But under *Cascade*, that theory of exclusion survives only if the Plaintiffs alleges below-cost

7  pricing.  *Cascade*, 502 F.3d at 513-14.  The Safeway Plaintiffs have not done so and cannot possibly

8  do so.  Thus, the Court should dismiss their complaint with prejudice.

9

10  Dated:  December 10, 2007                WINSTON & STRAWN LLP

11                                          By:    /s/ James F. Hurst

12                                                 James F. Hurst
                                                   Attorney for Defendant
13                                                 ABBOTT LABORATORIES

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5894