IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC.,<br><br>          Plaintiffs,<br><br>     v.<br><br>ABBOTT LABORATORIES,<br><br>          Defendant. | No. C 07-5985 CW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR A STAY |
| SAFEWAY INC., et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>ABBOTT LABORATORIES,<br><br>          Defendant. | No. C 07-5470 CW |
| RITE AID CORPORATION, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>ABBOTT LABORATORIES,<br><br>          Defendant. | No. C 07-6120 CW |

```
SMITHKLINE BEECHAM CORPORATION d/b/a/
GLAXOSMITHKLINE,
                                        No. C 07-5702
         Plaintiff,

    v.

ABBOTT LABORATORIES,

         Defendant.
_____/
```

Defendant Abbott Laboratories moves for a stay of all proceedings subsequent to fact discovery pending the Ninth Circuit's decision in the related case <u>In re Abbott Laboratories Norvir Anti-Trust Litigation</u>, No. C 04-1511 CW.  Plaintiffs oppose the motion.  The matter was taken under submission on the papers.  Having considered all of the papers submitted by the parties, the Court grants Abbott's motion.

## BACKGROUND

Abbott manufactures ritonavir, which it sells in stand-alone form as Norvir, a protease inhibitor (PI) used to combat HIV infection.  When used in small quantities with another PI, Norvir increases the efficacy of that PI.  Norvir is unique among PIs in this respect, and is widely prescribed for use as a "booster."

Abbott also manufactures Kaletra, a single pill that contains the PI lopinavir as well as ritonavir, which is used to boost the effects of lopinavir.  Although effective and widely used, Kaletra causes some patients to experience significant side effects.

In 2003, two new PIs were introduced to the market.  These PIs were as effective as Kaletra, and were more convenient.  Following their release, Kaletra's market share fell.  On December 3, 2003,

1  Abbott raised the wholesale price of Norvir by 400 percent while
2  keeping the price of Kaletra constant.

3  In 2004, a class of indirect purchasers of Norvir sued Abbott
4  for monopolization and attempted monopolization in violation of § 2
5  of the Sherman Act.  The plaintiffs in that case, In re Abbott
6  Labs., contended that the price increase in the "boosting market,"
7  which consists solely of Norvir, was an illegal effort to create or
8  maintain a monopoly for Kaletra in the "boosted market," which the
9  plaintiffs defined as the market for those PIs that are prescribed
10 for use with Norvir as a booster.

11 The present actions were filed in late 2007.  The Meijer, Rite
12 Aid and Safeway cases were filed by direct purchasers of Norvir and
13 Kaletra.  The SmithKline Beecham case was filed by GlaxoSmithKline
14 (GSK), a competitor of Abbott's.  All of the Plaintiffs in the
15 present cases, like the plaintiffs in In Re Abbott Labs., assert
16 claims under § 2 of the Sherman Act based on the monopoly
17 leveraging theory described in Image Technical Services, Inc. v.
18 Eastman Kodak Co., 125 F.3d 1195 (9th Cir. 1997).  This theory
19 provides that "a monopolist who acquires a dominant position in one
20 market through patents and copyrights may violate § 2 if the
21 monopolist exploits that dominant position to enhance a monopoly in
22 another market."  Id. at 1216.

23 In August, 2008, the Court certified an interlocutory appeal
24 of its order in In re Abbott Labs. denying Abbott's motion for
25 summary judgment.  In doing so, the Court identified three of its
26 decisions as involving "controlling questions of law," see 28
27 U.S.C. § 1292(b):

3

1) That, even though Abbott possesses a patent for Norvir, under <u>Blue Shield of Virginia v. McCready</u>, 457 U.S. 465 (1982), the plaintiffs were not precluded as a matter of law from establishing an antitrust injury by virtue of their paying a "penalty" in the form of an increased price for Norvir in the boosting market if they chose to use a boosted PI that competes with Kaletra;

2) That the plaintiffs were not precluded as a matter of law from establishing at trial that Abbott possesses monopoly power over the boosted market by showing that Abbott successfully used exclusionary pricing to slow a market share decline, even though some existing competitors had allegedly increased both their market share and their prices since the Norvir price increase; and

3) That to succeed on their monopoly leveraging claim based on Abbott's unilateral pricing conduct, the plaintiffs were not required to show that the imputed price of the lopinavir portion of Kaletra was below Abbott's average variable cost of producing it, notwithstanding the Ninth Circuit's decision in <u>Cascade Health Solutions v. PeaceHealth</u>, 515 F.3d 883 (9th Cir. 2008), which held that, in an antitrust action based on a theory of exclusionary bundled discounting, the plaintiffs must ordinarily demonstrate that the imputed price of the competitive product in the bundle is below the average variable cost of producing it.

4

In December, 2008, the Ninth Circuit agreed to hear Abbott's interlocutory appeal. The appeals court subsequently granted the parties' joint motion to expedite the appeal and stated that it would schedule oral argument for May, 2009. Abbott now moves for a stay of these proceedings following the conclusion of fact discovery, pending resolution of the appeal.

## DISCUSSION

It is well-established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time, effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); see also Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir. 2005). As the Ninth Circuit instructs,

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979).

When determining whether a stay is appropriate, the district court should weigh the competing interests that will be affected by its decision. "Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law

5

which could be expected to result from a stay." Lockyer, 398 F.3d at 1110 (quoting CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)). The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." Landis, 299 U.S. at 255.

Plaintiffs argue that a stay is not warranted here because the outcome of the In re Abbott Labs. appeal "will not significantly simplify" these cases. The Court is not persuaded by this argument. Whether the Ninth Circuit affirms the Court's denial of summary judgment in its entirety or reverses the Court on one or more grounds, resolution of the appeal will have at least some bearing on these cases. Depending on the precise nature of the Ninth Circuit's decision, it may even be case-dispositive.

Plaintiffs point out several examples of how a hypothetical Ninth Circuit decision might not determine the outcome of these cases. First, Plaintiffs note that Abbott's argument concerning antitrust injury is that no such injury can be based on purchases of Norvir, since Norvir is in the "boosting" market, over which Abbott enjoys a legal monopoly by virtue of its patents. The direct purchaser Plaintiffs here allege overcharges on their purchases of both Norvir and Kaletra, and GSK's injury is based on decreased revenues from the sale of its own boosted PI, not on Norvir overcharges. However, Plaintiffs do not dispute that, if the Ninth Circuit rules on the antitrust injury issue, its decision will likely influence this Court's determination of whether the redress sought by the direct purchaser Plaintiffs for Norvir

6

overcharges is permissible. In addition, it is possible that the Ninth Circuit may rule on the issue of whether a barrier to entry in the boosted market can constitute an antitrust injury. Any such ruling may affect the damages available to GSK.

Second, Plaintiffs point out that the issue of monopoly power is fact-dependant, and they assert that they have developed a fuller factual record on the matter than did the plaintiffs in <u>In re Abbott Labs.</u> They also have different theories of how Abbott's market share should be determined. The significance to the present cases of a Ninth Circuit ruling on the monopoly power issue depends on the precise nature of that ruling. While it is possible that a Ninth Circuit decision could be so fact-specific that it would not be determinative of the monopoly power issue here, it is also possible that the decision could announce a more general rule of law that would describe the factual showing Plaintiffs must make. In any event, it is likely that, if the appeals court rules on the monopoly power issue, the decision will at least guide this Court's evaluation of whether Plaintiffs have come forward with evidence sufficient to demonstrate that Abbott possesses monopoly power; notwithstanding the alleged larger record here, the basic facts are the same.

Third, Plaintiffs maintain that resolution of the <u>Cascade</u> issue in Abbott's favor will not simplify these cases because the direct purchaser Plaintiffs assert that lopinavir actually <u>is</u> sold below cost. They also assert that it is extremely unlikely that the Ninth Circuit will require the <u>In re Abbott Labs.</u> plaintiffs to satisfy the <u>Cascade</u> test in any event, because imposing such a

7

1  requirement would require the appeals court to overrule <u>Image</u>
2  <u>Technical</u>, in which it adopted the monopoly leveraging theory of
3  antitrust liability.  As to this last point, the Court disagrees
4  that requiring Plaintiffs to satisfy the <u>Cascade</u> test would
5  necessarily require overruling <u>Image Technical</u>.  <u>Image Technical</u>
6  simply established that an antitrust violation can be premised on
7  exploiting a permissible monopoly in one market to achieve a
8  monopoly in another market.  Here, that alleged exploitation takes
9  the form of a "discount" on ritonavir when it is sold as part of
10 Kaletra instead of in its stand-alone form, Norvir.  The discount,
11 which was actually created when Abbott <u>increased</u> the price of
12 Norvir, is allegedly only possible because Abbott's monopoly over
13 the boosting market permits it to charge a price for Norvir that it
14 would not be able to charge if Norvir had to compete with other
15 products.  Even under <u>Image Technical</u>'s monopoly leveraging theory,
16 the relatively high price of Norvir only becomes anti-competitive
17 -- and thus unlawful -- once the resulting discount grows large
18 enough to drive consumers to purchase Kaletra instead of their
19 preferred boosted PI.  <u>Cascade</u>, if it applied here, would merely
20 inform the determination of whether, as a matter of law, the
21 discount is large enough to be considered anti-competitive.
22 Requiring Plaintiffs to satisfy the <u>Cascade</u> test would not
23 eliminate the monopoly leveraging theory as a general matter.
24     In any event, it is preferable to delay proceeding with expert
25 discovery, dispositive motions and trial until it is known whether
26 the <u>In re Abbott Labs.</u> plaintiffs must satisfy <u>Cascade</u>'s below-

8

cost-pricing test to prevail on their Sherman Act claims.[1]  The Court has already held that Plaintiffs here do not, and thus will not require them to prove below-cost pricing at trial.  If Abbott is found liable after trial based on Image Technical alone and the Ninth Circuit subsequently holds that Cascade applies as well, a new trial would be necessary.

Fourth, Plaintiffs point out that GSK asserts a claim for breach of the covenant of good faith and fair dealing, on the theory that the Norvir price increase deprived it of the benefit of its license to market its boosted PI for use with Norvir, as well as a claim under the North Carolina Unfair Trade Practices Act.  Plaintiffs may be correct that adjudicating these claims, unlike GSK's Sherman Act claims, will not depend on resolution of the appeal in In re Abbott Labs.[2]  However, while it might be possible to proceed to trial on these state law claims, they do not dominate the present cases and severing them would not be desirable.

Plaintiffs assert that they will be harmed by a stay because their cases will be delayed potentially for years as the losing party in In re Abbott Labs. seeks en banc review and certiorari.

---

[1] As Abbott notes, the appeals court must determine whether the Supreme Court's recent decision in Pacific Bell Telephone Co. v. linkLINE Communications, Inc., ___ U.S. ___, 172 L. Ed. 2d 836, 2009 U.S. LEXIS 1635, is applicable to the plaintiffs' Sherman Act claims.

[2] GSK also asserts a claim under the North Carolina Prohibition Against Monopolization.  Plaintiffs assert that this claim, as well, does not depend on the Ninth Circuit's decision.  However, there do not appear to be any North Carolina cases interpreting the Prohibition in a way that is relevant to the issues here, and Plaintiffs have not pointed to any other evidence of how the North Carolina Supreme Court would rule on those issues.  Accordingly, the Court will be guided by the Ninth Circuit's decision.

9

However, the Court is not inclined to maintain in place any stay after the Ninth Circuit panel issues its decision, and Plaintiffs' concerns are overstated.  Moreover, the Ninth Circuit has already agreed to expedite the appeal, and it is possible that a decision will be issued within a matter of months, perhaps even permitting the trial to go forward as planned in November.  In the event that the trial must be delayed, any such delay will last only as long as it takes for the Ninth Circuit panel to issue its opinion and will not put Plaintiffs at a strategic disadvantage.  Plaintiffs' argument that the public interest in putting an end to Abbott's allegedly anti-competitive conduct will be harmed by even a modest delay in the resolution of their claims is undercut by the fact that they filed suit at the end of the limitations period, and only after the indirect purchasers had been litigating their Sherman Act claims against Abbott for three years.  In addition, the fact that a stay will apply only to proceedings following the close of fact discovery will ensure that all relevant documents are produced and all witness testimony is preserved through depositions.

In short, the legal framework that governs the claims in these cases is subject to uncertainty pending the Ninth Circuit's decision in <u>In re Abbott Labs.</u>  The appeals court is sure to resolve at least some of the issues before it in a way that has a direct bearing on the present cases.  It would be an extraordinary waste of time and money to conduct expert discovery, entertain case-dispositive motions and proceed to trial, only to have to do it all again because the experts, the parties and the Court were proceeding under a legal framework that the Ninth Circuit

10

determined did not apply.

In their response to Abbott's supplemental brief in support of the present motion, Plaintiffs acknowledge the desirability of delaying trial until the Ninth Circuit panel issues its decision. In fact, they state that they have no objection to modifying the case management schedule to delay briefing on dispositive motions and to continue the trial until after the decision. The only point of contention thus appears to be whether expert discovery should proceed as planned. While certain aspects of the expert reports may be unaffected by the Ninth Circuit's decision, the possibility that the Ninth Circuit may adopt a liability rule that the antitrust liability experts have not anticipated militates against proceeding with expert discovery until the decision is issued.

## CONCLUSION

Balancing the equities at stake and the efficient management of these cases, the Court concludes that a stay is appropriate and GRANTS Abbott's motion (Docket No. 163 in Case No. 07-5985; Docket No. 78 in Case No. 07-5470; Docket No 68 in Case No. 07-6120; Docket No. 120 in Case No. 07-5702). All proceedings subsequent to fact discovery are hereby stayed until the Ninth Circuit panel issues its decision in In Re Abbott Labs. Once the decision is issued, the parties should attempt to stipulate to new deadlines for the remaining events in the case management order and must file a report with the Court within ten days. For the time being, the Court will maintain the November 12, 2009 trial on its calendar. The trial may be continued if the need arises.

Plaintiffs' administrative motion to extend the expert

11

discovery schedule (Docket No. 198 in Case No. 07-5985; Docket No. 103 in Case No. 07-5470; Docket No 93 in Case No. 07-6120; Docket No. 143 in Case No. 07-5702) is DENIED as moot in light of this order.  Abbott's motion to file a supplemental brief (Docket No. 187 in Case No. 07-5985; Docket No. 91 in Case No. 07-5470; Docket No 81 in Case No. 07-6120; Docket No. 133 in Case No. 07-5702) is GRANTED.  The Court will issue a separate ruling on Plaintiffs' motion for approval of their proposed form and manner of notice of pendency of the action to the direct purchaser class.

    IT IS SO ORDERED.

Dated:  3/18/09

    CLAUDIA WILKEN
    United States District Judge